**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NUMBER: _______________**

LINCARE INC., a Delaware corporation,

Plaintiff,

vs.

JAMES DOYLE and
DOYLE RESPIRATORY, LLC.,

Defendants.
____________________________________/

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Lincare Inc., a Delaware corporation ("Lincare") sues James Doyle ("Doyle") and Doyle Respiratory, LLC ("Doyle Respiratory"), both of which are referred to herein as the "Defendants," and states as follows:

## A. Parties, Jurisdiction, and Venue

1. Lincare is a Delaware corporation with its principal place of business being located in Pinellas County, Florida, in the Middle District of Florida.

2. Doyle is a sui juris individual, residing in the State of Rhode Island, who has submitted to the jurisdiction of this Court, and is the principal of Doyle Respiratory.

3. Doyle Respiratory is a Rhode Island limited liability company with its principal place of business being located in Pawtucket, Rhode Island.

4. As to each cause of action set forth herein, this Complaint asserts causes of action that each exceed the sum of $75,000, exclusive of interest and costs, or that seeks related equitable relief, brought between citizens of different states of the United States, or for related

equitable relief. Accordingly, this Court possesses jurisdiction over this cause pursuant to 28 U.S.C. §1332.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 because each cause of action asserted herein has arisen in the Middle District of Florida.

## B. Common Allegations

6. Lincare is a nationwide provider of oxygen and other respiratory therapy services to customers in the home and also provides durable medical equipment and other services in certain geographic markets. Lincare's customers typically suffer from chronic obstructive pulmonary disease ("COPD"), such as emphysema, chronic bronchitis or asthma, and require supplemental oxygen or other respiratory therapy services. Lincare's referral sources, such as physicians and hospital discharge planners, refer customers to one of Lincare's operating centers so that Lincare's operating center can coordinate delivery of the prescribed therapy as dictated by the physicians' orders. Although Lincare employs approximately 450 individuals in Pinellas County, Florida, it operates in forty-seven (47) states. The business activities of Lincare are more fully covered in the printed copy of Lincare's web page, attached hereto as Exhibit "A."

7. During all times relevant hereto, Lincare has maintained an operating center in Fall River, Massachusetts that services the region of southern Massachusetts and portions of Rhode Island, including without limitation Pawtuckett, Rhode Island (the "Service Area"). For purposes of this complaint, the term "Service Area" is considered to be coterminous with the service area defined in the Agreement.

8. On or about December 29, 2004, Lincare purchased substantially all the assets of Respiratory Solutions, Inc. ("RSI"), and of certain of its subsidiaries, including without limitation the businesses from five RSI facilities, including the business from RSI's Fall River,

Massachusetts facility, and the goodwill of RSI and its subsidiaries (the "Acquisition"). Contemporaneously with the Acquisition and as a material inducement to closing the Acquisition, Lincare acquired a leasehold interest in the Fall River, Massachusetts facility. Additionally, contemporaneously with the Acquisition and as a material inducement Lincare's closing the Acquisition, Lincare offered employment, and Doyle, who at the time of the closing possessed an ownership interest in stock options or warrants of RSI, accepted employment with Lincare. Doyle, thereupon, began working as the center manager at Lincare's Fall River, Massachusetts facility. The employment agreement (the "Agreement"), reflecting Lincare's offer and Doyle's acceptance of employment, is attached hereto as Exhibit "B" and is incorporated herein by reference. Doyle's employment with Lincare allowed Doyle to obtain the following:

a. highly competitive compensation in his chosen area of interest in the health field;

b. ongoing training and oversight from experienced Lincare teammates; and

c. access to marketing contacts and other Lincare data pertaining to the healthcare industry and the services that Lincare provides to customers nationwide.

9. Pursuant to the Agreement, Doyle agreed that, among other things, upon termination of his employment for any reason, Doyle would, for a period of two (2) years, refrain from engaging in or participating in, directly or indirectly, providing oxygen, oxygen equipment, durable medical equipment, and supplies to customers in their homes or in alternate site care facilities within a fifty (50) mile radius of Lincare's acquired Fall River, Massachusetts facility located at 1650 North Main Street, Fall River, Massachusetts (the "Lincare Area Location").

10. From the Lincare Area Location and as its manager, Doyle had access to Lincare's business, marketing, financial, and health records pertaining to operations, referral sources, and customers within the Service Area. Included among his duties as center manager was the responsibility to maintain Lincare business records, grow the Lincare Area Location customer base (the "Lincare Customers"), perform any needed equipment set-ups of oxygen equipment in customer homes, and supervise the facility's employees, including service and sales representatives. Customer records, data relating to Lincare's referral sources, and other related data (collectively, the "Confidential Data") were maintained in a strictly confidential manner in Lincare's computerized business records, accessible by Doyle during his employment as center manager of the Lincare Area Location.

11. Pursuant to the Agreement, Doyle agreed that Lincare had a legitimate business interest in the restrictive covenants set forth in the Agreement, including but not limited to, benefits derived from Doyle's participation in an established nationwide healthcare business, access to valuable proprietary information, substantial relationships with Lincare referral sources and Customers, other sales representatives and contacts at Lincare, hospitals and other medical service facilities and organizations, and substantial Lincare Customer goodwill associated with Lincare's practice in the Service Area, such information, relationships, and goodwill either existing with Lincare prior to the Acquisition or acquired by Lincare as a result of the Acquisition.

12. Pursuant to the Agreement, Doyle agreed that, upon breach of the restrictive covenants set forth in the Agreement, Lincare would be irreparably injured and entitled to injunctive relief. He further agreed that the use or misappropriation of Confidential Data would be a breach of his fiduciary duty to Lincare. Moreover, Doyle agreed that upon Doyle's breach

of the Agreement, he would be liable to Lincare for damages and Lincare would be entitled to injunctive relief. Finally, Doyle agreed that the laws of the State of Florida would govern any dispute pursuant to the Agreement, and that any dispute would be brought and heard in "the federal or state courts of general jurisdiction located in the State of Florida." Pursuant to the Agreement, Doyle expressly consented to the subject matter and personal jurisdiction of this Court, regarding enforcement of the Agreement.

13. During his tenure at Lincare, Doyle maintained a panoply of direct contact with the State of Florida, in connection with his employment. Because Lincare is headquartered in the State of Florida, (a) his salary was received from the State of Florida, (b) his monthly payment in partial consideration for the non-competition covenant was received from the State of Florida; (c) his business expense reporting was made to Lincare personnel in the State of Florida, and reimbursement or payment for same was received from the State of Florida; and (d) insofar as Doyle received a portion of the purchase price payment from the Acquisition at its closing or in the form of deferred purchase price payments made after closing by Lincare by virtue of his ownership interest in stock options or warrants of RSI, such payments were made from the State of Florida.

14. Doyle advised Lincare of his resignation from Lincare on or about May 6, 2005, without advising Lincare of any new position that he might be taking elsewhere within the industry.

15. During or about October 11, 2006, Doyle formed and joined Doyle Respiratory, with its primary place of business based at 150 Main Street, Pawtucket, Rhode Island 02860, Pawtucket, Rhode Island being situated within the Service Area. Doyle Respiratory now functions as a direct competitor of Lincare within the Service Area. Upon information and

belief, Doyle Respiratory was formed by Doyle in order to exploit the access to Lincare referral sources and Customers and Confidential Data derived by Doyle while he was employed at Lincare and during his tenure with RSI. By soliciting referral sources, likely Lincare customers are directed away from Lincare and instead to Doyle in a manner not foreseen at the time of the Acquisition, and inconsistent with the terms of the Agreement.

16. Since Doyle's resignation from Lincare, Lincare has been able to verify that marketing has occurred within the Service Area, including without limitation at Quincy Medical Center in Massachusetts.

17. Upon information and belief, Doyle has further utilized Lincare marketing sources and other data not readily available to the public or Doyle Respiratory.

18. Doyle is presently engaged in the same business area at Doyle Respiratory that he was involved in while at Lincare, and has done nothing to dispel Lincare's well founded belief as to his intention to continue to sell products and services in the Service Area in competition with Lincare, to solicit Lincare referral sources and potentially customers, to have them transact business with Doyle Respiratory; and to otherwise transact business in violation of the Agreement.

19. Doyle Respiratory has been favorably impacted by the actions of Doyle in violation of the Agreement, and is likely to benefit in the foreseeable future by the course of conduct employed by Doyle in violation of the Agreement, absent the granting of relief as requested by Lincare herein. Significantly, Lincare would not have proceeded with the Acquisition of RSI and the business location formerly operated by Doyle and his applicable fellow principals if it had known that certain of them would disregard their obligations under the employment-related contracts that they were to sign in connection with the Acquisition.

20. On April 5, 2007, Lincare sent a letter to the Defendants (the "Demand Letter"), providing five (5) days' notice to cease and desist their actions as described above. A copy of the Demand Letter is attached hereto as Exhibit "C." As of the date of this Complaint, the Defendants have not responded and have continued in these activities.

21. All conditions precedent to this action have either occurred, have been satisfied by Lincare, or have been waived by the Defendants.

22. Lincare has retained the law firm of GrayRobinson, P.A. to represent it in this action and agreed to pay a reasonable fee for legal services rendered herein. Pursuant to the Agreement, and under applicable law, Doyle is required to compensate and reimburse Lincare for this expense.

23. Lincare is continuing its investigation of the facts and circumstances giving rise to the filing of this Complaint at present.

**Count I - Breach of Contract Injunctive Relief**

24. This is an action for injunctive relief by Lincare and against Doyle based upon his breach of the Agreement.

25. Lincare realleges and reincorporates paragraphs 1 through 23 of this Complaint as though fully set forth herein.

26. Doyle is in breach of the restrictive covenants that he agreed to in the Agreement.

27. Lincare has a protectable legitimate business interest in restraining Doyle from competition with Lincare as agreed in the Agreement, and as demonstrated by the following:

a Lincare's relationships with its employees and other healthcare professionals within the Service Area will be damaged if Lincare's restrictive covenants are not enforced. Lincare's existing employees

benefit from their association with Lincare. Lincare Customers benefit from the services that Lincare offers. Lincare's reputation and its Customer base allow Lincare's sales representatives to build specialized practices. Lincare's reputation and Customer goodwill, goodwill existing prior to the Acquisition and goodwill acquired as a result of the Acquisition, allow Lincare's facilities to maintain a certain level of internal and external referrals for its sales representatives' services and for Lincare's services. If Lincare's non-compete and non-disclosure provisions are not enforced, and Lincare personnel leave to practice in competition with Lincare, its internal and external referral sources would be damaged immeasurably.

b. Lincare will lose Customer goodwill within the Service Area if Doyle's competition with Lincare in contravention of the Agreement is not enjoined. The goodwill of Lincare's business was developed over the course of years of service in the community prior to the employment of Doyle at considerable effort and expense to Lincare. Additionally, Lincare paid consideration for the business and goodwill of RSI. Such goodwill was also developed by cultivating existing and future Lincare Customers and referral source relationships during the time of Doyle's employment. Doyle was hired by Lincare as the center manager of Fall River, Massachusetts with the understanding that Lincare would provide him with Confidential Data that he would use while working at Lincare, not use as principal of Doyle Respiratory to compete with Lincare.

c. Lincare has lost and will continue to lose referrals as a result of Doyle's direct competition in contravention of the Agreement. Lincare may lose existing or future Lincare Customers as a result of Doyle's direct competition in contravention of the Agreement. Lincare has developed existing and future Lincare Customer and referral source relationships prior to, and during Doyle's above-alleged activities or same were acquired by Lincare from RSI through Lincare's purchase of goodwill. Doyle, while employed by Lincare, was afforded direct, unsupervised contact with Lincare Customers and referral sources. The revenues derived by Lincare from Customer services within the Service Area are significant, as has been the prospect for growth. A significant referral base existing at Lincare prior to and during the time of Doyle's employment will be lost to Doyle's competition within the Service Area in violation of the Agreement.

d. Lincare will be damaged by the use of the Confidential Data. Doyle has had access to proprietary information relating to Lincare's business, including billing processes and procedures, business cost and profit information, Customer lists and other patient information, referral source information, provider information and other information, which proprietary information is, upon information and belief, presently being used by Doyle Respiratory in direct competition with Lincare.

28. The restrictions on competition in the Agreement are reasonable in time and area under Florida Statutes § 542.335 (2003).

29. As a result of Doyle's breach of the Agreement, Lincare has suffered and will continue to suffer irreparable harm, including, but not limited to, damage to its relationships with its employees, damage to Lincare's relationships with referring and associating health professionals and hospitals, including health care insurers, loss of revenues, and continued utilization by the Defendants of proprietary information obtained from Lincare in competition with Lincare.

30. Lincare has a likelihood of success on the merits of its breach of contract claim against Doyle.

31. Lincare lacks an adequate remedy at law.

WHEREFORE, Lincare respectfully requests that this Court enter a temporary and permanent injunction against Doyle, restraining him from all misconduct referenced above, including the following:

a. the further healthcare marketing and service in competition with Lincare within the Service Area in a manner consistent with the Agreement;

b. the continued retention of Confidential Data;

c. contact with Lincare Customers;

d. the continued use of Lincare referral sources, contacts, and market resources;

e. the acceptance of any emolument from a direct competitor of Lincare; and

f. the prohibition of any other act inconsistent with a fair reading and application of the Agreement. In addition, Lincare requests an award of attorney's fees and costs pursuant to the Agreement and Florida Statutes §542.335 (2003), and such further relief as the Court deems appropriate.

**Count II - Breach of Contract Damages**

32. This is an action for contract damages in excess of $75,000, by Lincare and against Doyle based upon his breach of the Agreement.

33. Lincare realleges and reincorporates paragraphs 1 through 23 of this Complaint as though fully set forth herein.

34. Doyle has breached and/or intends to breach the restrictive covenants in the Agreement.

35. As a result of Doyle's breach of the Agreement, Lincare has suffered and will continue to suffer damages.

36. The damages have been sustained by Lincare upon breach by Doyle, and are recoverable based upon Doyle's breach.

WHEREFORE, Lincare respectfully requests that this Court enter judgment in favor of Lincare and against Doyle for damages, interest and attorney's fees and costs pursuant to the Agreement and Florida Statutes §542.335 (2003), and award Lincare such further relief as the Court deems appropriate.

**Count III- Breach Of Fiduciary Duty- Confidential Data**

37. This is an action for damages in excess of $75,000 by Lincare and against Doyle based upon his breach of a fiduciary duty to Lincare to maintain the confidentiality of the Confidential Data.

38. Lincare realleges and reincorporates paragraphs 1 through 23 of this Complaint as though fully set forth herein.

39. Lincare reposed trust and confidence in Doyle, that Doyle acknowledged orally and in writing. The legitimate purposes for Doyle's use of the Confidential Data and access to

Lincare Customers and referral source information was always understood by Doyle, but he betrayed Lincare's trust and confidence in the manners outlined above.

40. Doyle has breached and intends to breach the restrictive covenants in the Agreement. In particular, Doyle has (a) used the Confidential Data in a manner knowingly calculated to harm Lincare, and (b) actively and successfully solicited referral sources of Lincare.

41. As a result of Doyle's breach of the Agreement, Lincare has suffered and will continue to suffer damages.

WHEREFORE, Lincare respectfully requests that this Court enter judgment in favor of Lincare and against Doyle for damages, and award Lincare such further relief as the Court deems appropriate.

**Count IV - Common Law Conversion**

42. This is an action for damages against the Defendants in excess of $75,000, exclusive of attorneys' fees, costs, and interest, based upon their conversion of the Confidential Data.

43. Lincare realleges and reincorporates paragraphs 1 through 23 of this Complaint as though fully set forth herein.

44. At all times relevant to this action, Doyle, individually and as principal of Doyle Respiratory, knew or should have known that he was not entitled to the Confidential Data, and that he was not entitled to misappropriate the Confidential Data.

45. Because the Confidential Data belongs to Lincare, Lincare has the right to exclusive possession of the Confidential Data.

46. The Defendants have used the Confidential Data for their own purposes, and refused to remit the Confidential Data even after Lincare has made demand.

47. Doyle's actions constitute a conversion of the Confidential Data.

WHEREFORE, Lincare requests judgment for damages against the Defendants, together with pre-judgment and post-judgment interest, court costs, and related expenses, together with any and all additional relief to Lincare deemed just and proper by this Court.

**Count V – Quantum Meruit**

48. This is an action sounding in quantum meruit directed by Lincare against Doyle Respiratory, and this Court possesses pendant jurisdiction over the resultant controversies.

49. Lincare realleges and incorporates by reference paragraphs 1 through 23 as though fully set forth herein.

50. Lincare has provided benefits to Doyle Respiratory that have been knowingly received by Doyle Respiratory, these being the benefits of the Confidential Data.

51. At all times relevant, Doyle Respiratory has known of the benefits being conferred by Lincare upon it.

52. In the ordinary course of business, a reasonable person or entity receiving such benefits would normally expect to pay for such benefits.

53. Lincare is entitled to be paid a reasonable value, by Doyle Respiratory, for the benefits involuntarily conferred.

54. Such damages should be measured as the value of Doyle Respiratory without the Confidential Data and other attributes conferred upon Doyle by Lincare, versus the current value of Doyle Respiratory after Doyle has had access to Lincare's Confidential Data, training, referral sources, and clientele.

WHEREFORE, Lincare demands judgment for damages against Doyle Respiratory, plus interest, costs, related expenses, and any other relief this Court deems appropriate.

/s/ Kelly A. Keller
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar No. 731013
**KELLY A. KELLER, ESQUIRE**
Florida Bar No. 0675121
GRAY ROBINSON, P.A.
201 N. Franklin Street, Suite 2200
Tampa, FL 33601-3324
Telephone: (813) 273-5066
Telecopier: (813) 221-4113
Attorneys for Lincare Inc.

**JOHN A. ANTHONY, ESQUIRE**
Florida Bar No. 731013
GRAY ROBINSON, P.A.
201 N. Franklin Street, Suite 2200
Tampa, FL 33601-3324
Telephone: (813) 273-5066
Telecopier: (813) 221-4113
Attorneys for Lincare Inc.

# 847633 v1