# EXHIBIT “B”

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NUMBER: 8:07-cv-00786-T-23MSS**

LINCARE INC., a Delaware corporation,

Plaintiff,

vs.

JAMES DOYLE and
DOYLE RESPIRATORY, LLC.,

Defendants.
_______________________________________/

**AFFIDAVIT OF GORDON M. WORLEY**

STATE OF CONNECTICUT

COUNTY OF HARTFORD

Before me, the undersigned authority, personally appeared Gordon M. Worley, who after first being duly sworn, deposes and says:

1. I am Gordon M. Worley. At all times relevant hereto, I was a Regional Manager for Lincare Inc. ("Lincare"). My region comprised the Northeast United States and included the Fall River, Massachusetts Operating Center of Lincare. I have personal knowledge of the facts set forth in this affidavit. I understand this Affidavit will be considered by the Court in support of Lincare's Opposition to Defendants' Dispositive Motion to Dismiss for Lack of Personal Jurisdiction (With Incorporate Memorandum) and Defendants' Motion to Transfer Venue (With Incorporate Memorandum).

2. Lincare's principle place of business ("corporate headquarters") is 19387 U.S. 19 North, Clearwater, Florida 33764.

3. Lincare's Operation Center managed by Doyle was maintained at Lincare's expense, and Doyle used equipment, personnel and supplies at the Center provided by Lincare.

4. Lincare conducts it's business operations through approximately 980 operating centers. Strategic development, financial control, and operating policies for these operating centers are administered at Lincare's corporate headquarters in Florida. Each of Lincare's operating centers is managed by a Center Manager. James Doyle ("Doyle") was the Center Manager for Lincare's Fall River, Massachusetts Operating Center from December 29, 2004 to May 6, 2005.

5. Lincare provides a variety of respiratory healthcare services. These services are regulated and governed by federal and state laws and regulations. To keep abreast of and to comply with these laws and regulations, Lincare's corporate headquarters in Florida, among other things, generates and updates policies, procedures, and rules of compliance which were required to be followed by Center Managers like Doyle.

6. Lincare's corporate headquarters in Florida sets policy for the corporation.

7. Lincare's Polices and Procedure Manual, a manual disseminated to all Lincare Operating Centers, is generated, updated, and maintained by personnel at the corporate headquarters in Florida. This manual controls policies and procedures expected to be followed by Center Managers like Doyle.

8. Lincare's Quality Improvement Program is generated, updated, and maintained by Lincare's corporate headquarters in Florida. This program was expected to be followed by Center Managers like Doyle.

9. Lincare's safety and regulatory rules and policies are generated, updated, and maintained by Lincare's corporate headquarters in Florida. These rules and policies were expected to be followed by Center Managers like Doyle.

10. Violation of any of the policies, programs, or rules set forth in paragraphs 7-9 above by Doyle could have subjected him to disciplinary action by the corporate headquarters in Florida.

11. On December 29, 2004, Lincare and Doyle entered into an Employment Agreement ("Agreement"), a copy of which is attached hereto and incorporated herein as Exhibit "A".

12. The Agreement between Lincare and Doyle was created by the Legal Department of Lincare in Florida. The Agreement was finalized and executed by Lincare at Lincare's corporate headquarters in Clearwater, Florida. The Agreement was retained in Florida. This execution of the Agreement was in connection with the closing of an Asset Purchase Agreement among Lincare, Respiratory Solutions, Inc., its subsidiaries, and certain of its shareholders on December 29, 2004. Doyle was previously employed by Respiratory Solutions, Inc. or a subsidiary and possessed an ownership interest in Respiratory Solutions, Inc. at the time of the transaction's closing.

13. Upon the consummation of the above-referenced asset purchase transaction, in consideration of the purchase of the business and assets, Lincare's corporate headquarters in Florida caused moneys to be wired to Respiratory Solutions, Inc. Because he possessed an ownership interest in Respiratory Solutions, Inc., Doyle would have been a beneficiary of Lincare's payment to Respiratory Solutions, Inc.

14. Following its execution in Florida by Lincare, the Agreement envisioned continuing contacts, directly or indirectly, with Lincare's corporate headquarters in Florida. In fact, Doyle entered into the employment relationship with Lincare subject to the terms and conditions set forth in the Agreement, and such other terms and conditions of employment as Lincare's requires from its employees generally. See paragraph 1 of Exhibit "A." Broadly speaking, this included complying with all policies and procedures generated, updated, controlled, and maintained at Lincare's corporate headquarters in Florida.

15. After executing the Agreement, Doyle had continuing obligations to Lincare's corporate headquarters in Florida under the Agreement – for example, not to disclose confidential information, not to compete within the agreed upon time period set forth in the Agreement, and to comply with policies and procedures established by Lincare's corporate headquarters in Florida.

16. By entering into a contract with a Florida corporation, Doyle accepted the benefits of being affiliated with a nationwide organization, and agreed to be regulated by policies and procedures established by Lincare's corporate headquarters in Florida.

17. By executing the Agreement, Doyle agreed to submit to Lincare's regulation of his duties and responsibilities as a Lincare Center Manager.

18. The Agreement contained a Non-Competition provision which provided in essence that commencing on the date of the contract and continuing for two (2) years after the date Doyle's employment with Lincare ceased for any reason whatsoever, Doyle would not compete with Lincare. See paragraph 6 of Exhibit "A".

19. Doyle violated the Non-Competition provision of the agreement by creating Doyle Respiratory, LLC, which competed with Lincare within the two (2) year non-competition period.

20. Any damages due to Lincare for violation of the Non-Competition provision of the Agreement by Doyle will be calculated by and paid to Lincare's corporate headquarters in Florida.

21. The Agreement also contained a Confidentiality and Non-Solicitation provision which provided in essence that Doyle acknowledged that he occupied a position of trust and confidence, and would have received from Lincare certain proprietary and/or confidential information relating to Lincare, including but not limited to present or prospective market, sales, product, customer and referral source information, prices and pricing structure, contractual arrangements, company practices, policies and procedures, product and process knowledge, costs and supplier information, personnel data, and any strategy or plans related to any of the foregoing, which information was not generally available or disclosed to the public by Lincare. See paragraph 7 of Exhibit "A". Doyle did receive proprietary and confidential information from Lincare's corporate headquarters in Florida, and was obligated not to disclose such information pursuant to the Agreement.

22. Upon information and belief, Doyle violated the Confidentiality provision of his Agreement with Lincare, thus making him liable to Lincare for damages for breach of the Agreement.

23. Any damages due Lincare for violation of the Confidentiality provision of the Agreement by Doyle will be paid to Lincare's corporate headquarters in Florida.

24. As a Center Manager, Doyle would have received periodic proprietary and confidential reports from Lincare's corporate headquarters in Florida. This would have included Management Summary Reports and Performance Reports regarding Lincare's operating centers. It would have also included quarterly reports on quality improvement.

25. The Agreement also contained a Governing Law provision which stated that the interpretation and performance of the Agreement shall be governed by the laws of the State of Florida. This provision further stated Doyle agreed that exclusive jurisdiction for any claims, lawsuits, etc. shall lie in federal or state court in the State of Florida, and that claims shall be brought and heard in such Court. Further, Doyle consented to the Florida court having personal jurisdiction over him. See paragraph 8 of Exhibit "A".

26. The Agreement also had a Compliance provision which stated Doyle shall thoroughly familiarize himself and comply with the Lincare Corporate Compliance Program, and make appropriate disclosures to the Corporate Compliance Officer in accordance with the Corporate Compliance Program, such program having been administered from Lincare's corporate headquarters in Florida. See paragraph 9 of Exhibit "A". Violation of the Corporate Compliance Program by Doyle would have subjected him to disciplinary action by the corporate headquarters in Florida.

27. Any revenue generated by Doyle's operating center would have ultimately been accounted for in Lincare's corporate headquarters in Florida.

28. Doyle was paid a base salary bi-weekly, the payment of such salary having been accounted for and effected from Lincare's Payroll Department located in its corporate headquarters in Florida. In addition to his base salary and in consideration of his execution of the Agreement and as additional compensation for his Covenant Not to Compete, Doyle was

paid an additional $2,083.33 per month during his employment with Lincare by check directly from Lincare's Payroll Department located in its corporate headquarters in Florida.

29. Travel vouchers submitted by Doyle for reimbursement of expenses for vehicle mileage and the like would have been sent to Florida for payment by check directly to Doyle from Lincare's corporate headquarters in Florida.

30. When Doyle terminated his employment with Lincare, his last paycheck and payment for accrued vacation time were paid directly to him from Lincare's Payroll Department located in its corporate headquarter in Florida.

31. For any operational issues such as problems with a real estate lease, purchase of equipment or the like, Doyle or an employee to whom he would have delegated the responsibility would have dealt with Lincare's corporate headquarters in Florida.

32. Lincare's affiliate, Lincare Procurement Inc., is situated in Lincare's corporate headquarters in Clearwater. Doyle or an employee to whom he would have delegated the responsibility would have dealt directly with Lincare Procurement Inc. on matters of procuring equipment and marketing materials. Equipment and supplies for the Fall River Operating Center would have been procured by Doyle or his delegate by submitting a purchase order or similar paperwork to the corporate headquarters in Florida. Employees in Lincare's corporate headquarters in Florida would have arranged for the purchase of such equipment or supplies, and would have arranged for them to be delivered to the Fall River Operating Center.

33. Any marketing materials used by Doyle or employees under his direction, would have been created and shipped to him/them from Florida.

34. Certificates confirming that various compliance-related training had been completed by Doyle, such as HIPAA training, were returned to Lincare's corporate headquarters in Florida for filing and retention.

35. In addition to providing respiratory equipment such as an oxygen concentrator to its customers, Lincare's affiliate, Lincare Pharmacy Services Inc., provided respiratory medications to Lincare's customers located in the northeastern United States. These medications are provided to customers by mail order from Lincare Pharmacy Services Inc.'s pharmacy in Florida known as Reliant Pharmacy. Reliant Pharmacy provides to Lincare's centers usually on a daily basis, and would have provided to the Fall River facility during Doyle's employment, information relating to the status of the respiratory medications business with respect to that particular center. Doyle or an individual to whom he delegated authority would have interacted with Reliant Pharmacy directly with respect to new orders or re-orders for customers.

36. If Doyle had received a significant complaint by an employee, or encountered a significant employee discontent problem, that was not capable of being handled in his facility, he would have been expected to report this directly to the Human Resources Department in Lincare's corporate headquarters in Florida for resolution of the issue.

37. Lincare customers are, and were during Doyle's employment, eligible to register a complaint directly with Lincare's corporate headquarters in Florida. Resolution of such a complaint would have been pursuant to policies and procedures generated by Lincare's corporate headquarters in Florida and, if not resolved through the normal chain of command, would have involved Lincare's corporate headquarters in Florida.

38. Lincare paid for worker's compensation insurance for Doyle and other Lincare employees from Lincare's corporate headquarters in Florida. If Doyle had have sustained an on-

the-job injury that resulted in a claim for worker's compensation benefits, the claim would have been handled and processed in Lincare's corporate headquarters in Florida.

39. If Doyle had applied for unemployment benefits, the claim would have been handled by the Human Resources Department at Lincare's at its corporate headquarters in Florida.

GORDON M. WORLEY

Sworn to and subscribed before me this 31 day of October, 2007, by Gordon M. Worley, who is personally known to me or who has produced a CT Drivers License as identification, and who did (did not) take an oath.

Notary Public
Name: PAMELA ZIMMER

My commission expires:

PAMELA ZIMMER
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2010

# EMPLOYMENT AGREEMENT

This Agreement ("**Agreement**") made as of the 25th day of December, 2004, by and between LINCARE INC., a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 19387 U.S. 19 North, Clearwater, Florida 33764 (hereinafter referred to as "Lincare") and JAMES DOYLE, an individual having an address at 8 Massasoit Ave, Pawtucket RI 02861 (hereinafter referred to as the "**Employee**").

## W I T N E S S E T H:

**WHEREAS**, Lincare purchased and acquired pursuant to an Asset Purchase Agreement (hereinafter referred to as the "Asset Purchase Agreement") among Lincare, Respiratory Solutions, Inc., a corporation duly organized and existing under the laws of the State of Rhode Island (hereinafter referred to as "Company" or "RSI") and the shareholders of Company, substantially all of the assets and business of Company (such transaction is hereinafter referred to as the "Acquisition"); and

**WHEREAS**, Employee has been the Center Manager of the Fall River, Massachusetts office of Company prior to the Acquisition; and

**WHEREAS**, Lincare desires to employ the Employee as the Center Manager for the Fall River, Massachusetts, office of Lincare, which was formerly the office of Company upon the terms and conditions contained in this Agreement; and

**WHEREAS**, the Employee is willing to accept such employment with Lincare upon the terms and conditions contained in this Agreement;

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements herein contained, the parties hereto agree and contract as follows:

1. Employment

Lincare hereby employs the Employee, and the Employee hereby accepts employment with Lincare, subject to: (a) the terms and conditions set forth in this Agreement; and (b) such other terms and conditions of employment as Lincare requires from its employees generally.

EXHIBIT

tabbies

A

2. Powers, Duties and Responsibilities

(a) Employee shall, for so long as he remains employed by Lincare, including its parent, subsidiaries and affiliates devote his full time, attention and effort to the business of the Lincare during Lincare's normal business hours and during such other times as are reasonably necessary for the proper performance of his responsibilities hereunder and shall exert his best efforts to faithfully and competently perform and discharge all powers, duties and responsibilities assigned to him. Employee shall have such powers, duties and responsibilities as may be assigned to him from time to time including, without limitation, those established by Lincare generally for employees in a Center Manager or similar position as well as those set forth in any Measures of performance established for employee from time to time, and shall report to and be subject to the direction of such business manager as Lincare shall from time to time specify.

(b) Employee's primary duties shall be as a Center Manager for Lincare. Notwithstanding the foregoing, at Lincare's discretion, the Employee may be required to perform other functions or at other locations in connection with the business of the location or operating area by which he is employed.

3. Compensation and Benefits

(a) In consideration of the complete and satisfactory performance by Employee of all the terms and conditions of this Agreement and for other good and valuable consideration (including, but not limited to, the consideration payable to Employee pursuant to Section 6(d) hereof), Lincare shall pay the Employee a base salary of One Thousand Five Hundred Thirty-Eight and 46/100 Dollars ($1,538.46) bi-weekly, payable in accordance with Lincare's standard policies and practices of salary payment. For periods of time which are less than a bi-weekly payroll period, the amounts payable pursuant to this Section 3(a) shall be made on a pro rata basis.

(b) Employee shall be eligible for, and shall be subject to, all of the benefits, policies and practices of Lincare in effect from time to time.

4. Employee's Representations

(a) Employee represents and warrants to Lincare and its parent, subsidiaries and affiliates that his performance of all of the terms and provisions of this Agreement does not and will not breach any agreement or contract to which he is a party or by which he is bound and that he does not have any

express or implied obligations, directly or indirectly, to any third party which in any way conflicts with or compromises his performance of any of his obligations and representations under this Agreement.

(b) Employee represents and warrants to Lincare and its parent, subsidiaries and affiliates that the services to be performed hereunder shall be performed in a professional and workmanlike manner in conformity with this Agreement and that the Employee shall comply with all laws, rules, regulations, codes, standards and ordinances applicable to Lincare's business or the performance of the services hereunder. The Employee further represents and warrants that he will observe applicable policies, procedures, rules and regulations with respect to the conduct of its business in accordance with all applicable laws and regulations and for the safety and protection of persons and property.

5. Termination of Employment

(a) This Agreement and the employment provided herein shall automatically terminate upon the death of the Employee, or the disability of the Employee which cannot be reasonably accommodated by Lincare.

(b) This Agreement and the employment provided herein may be terminated by Lincare "for cause" upon the occurrence of any of the following:

(i) Lincare's reasonable belief that Employee has committed any of the following: (A) a felony; (B) fraud; (C) theft or embezzlement involving the assets of Lincare or its parent, subsidiaries and affiliates, or any customer or supplier of Lincare; or (D) a violation of any statute, law, ordinance, rule or regulation relating to any federal or state government funded health care program, including, but not limited to, the provisions of the federal anti-kickback and fraud and abuse statutes, laws, rules and regulations;

(ii) Lincare's reasonable belief that Employee has committed an act or omission which is the basis for immediate termination under any of Lincare's written policies and procedures, including but not limited to any of the "Major Infractions" as set forth in Lincare Inc.'s Employee Handbook;

(iii) the intentional failure or refusal of the Employee to perform his obligations or responsibilities hereunder, or to carry out any reasonable and lawful directions of Lincare with respect to such obligations or responsibilities or the manner of the performance of such obligations or responsibilities, or willful misconduct, continued neglect or

gross negligence with respect to the performance of his obligations or responsibilities hereunder;

(iv) Employee shall be excluded, debarred or otherwise ineligible to participate in the Federal health care programs or the Federal procurement or non-procurement programs or shall be convicted of a criminal offense that falls within the ambit of 42 U.S.C. Section 1320a-7(a) but has not yet been excluded, debarred or otherwise declared ineligible; or

(v) the Employee shall be in default of any provision of this Agreement and such default shall not have been completely cured within five (5) days following notice of same by Lincare to the Employee;

provided, however, that prior to any termination pursuant to this Section 5(b), the Employee shall be provided a reasonable opportunity to be heard thereon, pursuant to Lincare's problem resolution procedure as in effect from time to time.

(c) Nothing herein shall prevent Lincare from terminating the Employee's employment with Lincare at any time for any reason other than as set forth in Section 5(b) above (including, but not limited to, a determination by Lincare that the Employee has failed to satisfactorily perform the services and duties required of the Employee hereunder), it being understood and agreed by the parties that this Agreement shall in no manner alter the Employee's status as an employee at will, or alter or diminish in any respect Lincare's rights to treat the Employee as an employee at will under applicable law.

(d) Upon any termination pursuant to this Section 5, Lincare shall pay to the Employee all amounts due through the termination date, less any amounts owed by Employee to Lincare, and Lincare shall thereafter have no further liability to the Employee hereunder.

6. Non-Competition

In consideration of Agreement and Lincare's employment of Employee, the Employee hereby represents, warrants, covenants and agrees that, commencing on the Commencement Date hereof and continuing for two (2) years after the date Employee's employment with Lincare ceases for any reason whatsoever, the Employee will not, directly or indirectly, engage in the business of marketing, advertising, selling, leasing, renting, distributing, or otherwise providing oxygen, oxygen equipment, aerosol inhalation therapy equipment and respiratory medications, nasal continuous positive airway pressure devices, infant monitoring equipment and services, home sleep studies and related therapy equipment, ~~infusion therapy~~, pain

management, pharmacy services, or any other respiratory therapy or durable medical equipment, products, supplies and services to customers in their homes or other alternative site care facilities within the Territory. As used herein, the term "Territory" shall mean any location within fifty (50) miles of any Home location at which Employee was based or over which Employee had management responsibility during the term of his employment hereunder, regardless of which states such radius may include.

(b) Without limiting the generality of the provisions of Section 6(a) hereof, this Covenant Not to Compete shall be construed so that Employee shall also be in breach hereof if he is an employee, officer, director, shareholder, investor, trustee, agent, principal or partner of, or a consultant or advisor to or for, or a subcontractor or manager for, a person, firm, corporation, partnership, joint venture, association, trust or other entity, which is engaged in such business in the Territory, or if Employee receives, directly or indirectly, any compensation or remuneration from, or owns, directly or indirectly, any outstanding stock or shares or has a beneficial or other financial interest in the stock or assets of any such person, firm, corporation, partnership, joint venture, association, trust or other entity engaged in such business in the Territory. Notwithstanding anything to the contrary contained in this Section 6(b), Employee shall not be deemed to be in breach of this Covenant Not to Compete solely by reason of owning an interest of less than one percent (1%) of the shares of any company traded on a national securities exchange or in the over the counter market.

(c) It is expressly understood and agreed by Employee that it shall be a breach of this Covenant Not to Compete for Employee to assist, facilitate or encourage in any way any family member, any business associate, or any other person, firm, corporation, partnership, joint venture, association, trust or other entity, to engage in any activity which Employee is prohibited from engaging in by this Covenant Not to Compete.

(d) In consideration of Employee's execution of this Agreement and as additional compensation for his Covenant Not to Compete set forth in this Section 6, and subject to the provisions of Section 6(e) hereof, Lincare hereby agrees to pay to the Employee the sum of Two Thousand Eighty-Three and 33/100 Dollars ($2,083.33). For periods of time which are less than a full calendar month, the amounts payable pursuant to this Section 6(d) shall be made on a pro rata basis.

(e) Employee agrees that the remedy at law for any breach of obligation under this Covenant Not to Compete will be

inadequate and that in addition to any other rights and remedies to which it may be entitled hereunder, at law or in equity, Lincare shall be entitled to injunctive relief, and reimbursement for all reasonable attorneys' fees and other expenses incurred in connection with the enforcement hereof. It is the intention of Employee and Lincare that this Covenant Not to Compete be fully enforceable in accordance with its terms and that the provisions hereof be interpreted so as to be enforceable to the maximum extent permitted by applicable law. To the extent that any obligation to refrain from competing within an area for a period of time as provided in this Covenant Not to Compete is held invalid or unenforceable, it shall, be modified by the court to the minimum extent necessary to preserve its validity and enforceability such that the purpose of this Covenant Not to Compete, as intended by Employee and Lincare, can be achieved in a lawful manner. The modified obligations (and/or modified restricted Territory) imposed by the provisions of this Covenant Not to Compete shall be fully enforceable as modified. In the event any portion of this Section 6 is held unenforceable or against public policy or otherwise modified by a court of competent jurisdiction to reduce the obligation of, or restrictions upon, Employee shall, within thirty (30) days after such finding immediately reimburse Home all sums paid to Employee since the Covenant Date pursuant to Section 6(d) hereof.

(f) Employee acknowledges and agrees that his representations, warranties, covenants, agreements, commitments and obligations contained in this Section 6 are a condition precedent to Lincare's entering into this Agreement and that Lincare is specifically relying on such representations, warranties, covenants, agreements, commitments and obligations of Employee in entering into and performing this Agreement.

7. <u>Confidentiality and Non-Solicitation</u>

(a) Employee acknowledges that in his employment hereunder, he occupies a position of trust and confidence. Accordingly, in order to facilitate the performance of this Agreement and the activities contemplated by this Agreement, Lincare will disclose to the Employee certain proprietary and/or confidential information or, during the course of his performance hereunder, the Employee may discover or develop certain proprietary and/or confidential information of Lincare. As used herein, the term "**proprietary and confidential information**" of Lincare shall include all information of or relating to Lincare (including, but not limited to, present or prospective market, sales, product, customer and referral source information, prices and pricing structure, contractual arrangements, company practices, policies and procedures,

product and process knowledge, cost and supplier information, personnel data, and any strategy or plans related to any of the foregoing) which is not generally available or disclosed to the public by Lincare. The Employee acknowledges that all such information constitutes confidential and/or proprietary information of Lincare and agrees that he shall keep such information confidential; he shall use such information solely for the purpose of performing his obligations hereunder or activities contemplated by this Agreement; and that he shall not otherwise disclose or make use of such information during the term of this Agreement or afterwards.

(b) Without limiting the generality of the provisions of Section 7(a) hereof, this Section 7 shall be construed to prohibit Employee from engaging in any of the following: (i) directly or indirectly, hiring, offering to hire, enticing away or in any other manner persuading or attempting to persuade any officer, employee or agent of Lincare (including, but not limited to, any former officer, employee or agent of Company) to discontinue his or her relationship with Lincare; and (ii) directly or indirectly, soliciting, diverting or taking away, or attempting to solicit, divert or take away any customers, patients, referral sources, contractual relationships or other business Lincare had enjoyed or solicited prior to the date hereof or at any time during Employee's term of employment with Lincare. It is understood and agreed that the prohibitions contained in Section 7(b)(i) shall apply to all current and future officers, employees and agents of Lincare (including, but not limited to, any former officer, employee or agent of Company), whether or not any such person is then currently an officer, employee or agent of Lincare or whether any such prohibited activity is in connection with employment, an offer of employment or other action within or outside the Territory.

(c) All written information, drawings, documents and materials prepared by or furnished by Lincare or the Employee in the course of or as a result of his employment by Lincare shall be the sole and exclusive property of Lincare, and will be delivered to Lincare by the Employee on demand or immediately upon Employee's cessation of employment with Lincare for any reason whatsoever.

8. <u>Governing Law</u>

The interpretation and performance of this Agreement shall be governed by the laws of the State of Florida, without giving effect to its conflicts of law provisions. Each party hereby agrees that exclusive jurisdiction for any claims, demands, lawsuits, proceedings and controversies arising from or relating to this Agreement shall lie in federal or state

courts of general jurisdiction located in the State of Florida and any such claims, demands, lawsuits, proceedings and controversies shall exclusively be brought and heard in the federal or state courts of general jurisdiction located in the State of Florida. Each party hereby consents to the subject matter and personal jurisdiction of such courts in respect thereof.

9. Compliance.

Employee shall thoroughly familiarize himself and comply with the Lincare Inc. Corporate Compliance Program, and Employee understands that it is his obligation to make appropriate disclosures to the Corporate Compliance Officer in accordance with the Corporate Compliance Program.

10. Notices

All notices, requests, demands, reports, statements or other communications required to be given hereunder or relating to this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if personally served on the party to whom notice is given, or on the date of receipt if mailed to the party to whom notice is to be given, by first class mail, registered or certified, return receipt requested, postage prepaid, and properly addressed to the other party at the address for such other party first set forth above (Notices to Home shall be addressed to the attention of "Legal Department"). Either party may at any time direct in writing that all communications or particular communications or particular types of communications be delivered to specific designees other than those specified herein by notifying the other party in the manner specified herein.

11. Miscellaneous

(a) The terms and conditions of this Agreement constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all previous communications or agreements, either oral or written, between the parties. There are no understandings, representations or warranties of any kind whatsoever, except as expressly set forth herein. The determination that any provision of this Agreement is unenforceable shall in no way affect the enforceability of any other provision of this Agreement.

(b) The failure of any party to enforce at any time

any of the provisions of this Agreement shall not be construed to be a waiver of any such provisions, nor in any way affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce any such provisions. No waiver of any breach of this Agreement shall be deemed a waiver of any other or subsequent breach, whether of the same provision or otherwise.

(c) This Agreement is personal in nature. Neither party may assign this Agreement or any of his or its rights hereunder nor delegate or otherwise transfer any of his or its obligations in connection herewith without the prior written consent of the other party hereto; provided, however, that Lincare shall have the right at any time, and from time to time, to assign this Agreement to its parent or any affiliate or subsidiary or any successor to its business. This Agreement shall inure to the benefit of and be binding on the parties hereto and their respective successors, legal representatives, heirs and permitted assigns.

(d) No amendment or modification of this Agreement or waiver of the terms or conditions thereof shall be binding upon any party unless approved in writing by an authorized representative of such party.

(e) It is the explicit intention of the parties hereto that no person or entity other than the parties hereto is or shall be entitled to bring any action to enforce any provision of this Agreement against either of the parties hereto, and that the covenants, undertakings and agreements set forth in this Agreement shall be solely for the benefit of, and shall be enforceable only by, the parties hereto or their respective successors and assigns as permitted hereunder.

(f) In this Agreement, where applicable, references to the singular shall include the plural and references to the plural shall include the singular.

(g) All captions or titles used in this Agreement are for convenience of reference only and shall not affect its construction or interpretation.

(h) The provisions of Sections 6, 7, 8 and 10 hereof shall survive and continue after the expiration or termination of this Agreement.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the day and year first above written.

LINCARE INC.

By: ______________________

Title: ______________________

______________________
JAMES DOYLE